# EXHIBIT D




**Monday
October 1, 1990**

## Part III

## Department of Education

**34 CFR Part 682**
Stafford Loan, Supplemental Loans for Students, PLUS, and Consolidation Loan Programs; Interpretation; Rule



# DEPARTMENT OF EDUCATION

## 34 CFR Part 682

### Stafford Loan, Supplemental Loans for Students, PLUS, and Consolidation Loan Programs

**AGENCY:** Department of Education.
**ACTION:** Notice of interpretation.

**SUMMARY:** The Secretary interprets regulations issued for the Stafford Loan Program (formerly the Guaranteed Student Loan Program), the Supplemental Loans for Students (SLS) Program, the PLUS Program, and the Consolidation Loan Program, collectively referred to as the Guaranteed Student Loan (GSL) Programs, that prescribe the actions lenders and guarantee agencies must take to collect loans guaranteed under the GSL Programs. The substance of the interpretation is that these regulations preempt State law regarding the conduct of these loan collection activities.

**EFFECTIVE DATE:** This interpretation takes effect either 45 days after publication in the Federal Register or later if the Congress takes certain adjournments. If you want to know the effective date of this interpretation, call or write the Department of Education contact person. A document announcing the effective date will be published in the Federal Register.

**FOR FURTHER INFORMATION CONTACT:** Pam Moran, Guaranteed Student Loan Branch, Division of Policy and Program Development, Department of Education, room 4310, Mail Stop 5345, ROB-3, 7th and D Streets SW., Washington, DC 20202-5449, telephone number (202) 708-8242.

**SUPPLEMENTARY INFORMATION:** Questions have recently arisen about whether regulations issued by the Secretary to prescribe the actions that lenders must take to exercise due diligence in collecting delinquent GSL obligations, 34 CFR 682.411, and that guarantee agencies must take to collect defaulted GSL obligations, 34 CFR 682.410(b)(4), preempt State law. The Secretary issues this interpretation that 34 CFR 682.410(b)(4) and 34 CFR 682.411 preempt State law, including State case law, statutes, and regulations that are inconsistent with the provisions of these GSL regulations.

### Background

Under section 432(a)(1) of the Higher Education Act of 1965, as amended (the HEA), 20 U.S.C. 1082(a)(1), the Secretary is authorized to prescribe such regulations as may be necessary to carry out the purposes of part B of title IV of the HEA. Among the purposes of part B is to authorize the Secretary to guarantee loans insured by guarantee agencies, 20 U.S.C. 1071(a)(1)(D), and in furtherance of that purpose, to ensure that holders of loans guaranteed under the GSL programs exercise due diligence in attempting to collect those loans. 20 U.S.C. 1078(c)(2)(A).

In regulations adopted in 1979 and in effect through 1986, the Secretary established detailed directions specifying the collection actions to be taken by lenders on loans guaranteed directly by the Department under the Federal Insured Student Loan Program (FISLP) component of the GSL programs. *See:* 45 CFR 177.511 (1979), 34 CFR 682.511 (1985). Those regulations, however, imposed no comparable requirements on lenders with regard to loans guaranteed by State or private non-profit guarantee agencies, or on those agencies themselves, in collecting GSL program obligations that were reinsured and subsidized by the Department. The dramatic increase in the number and amount of delinquent and defaulted GSL obligations held by these parties between 1980 and 1986 demonstrated the need to adopt similar standards in the collection of these loans as well.

On November 10, 1986, therefore, the Secretary published regulations that prescribed, in 34 CFR 682.411, the steps that lenders must take to attempt to collect delinquent loans guaranteed by State and non-profit guarantee agencies in order for those loans to qualify for coverage under the Secretary's reinsurance agreements with the guarantee agencies. In 34 CFR 682.410(b)(4) of those same regulations, the Secretary prescribed the steps that guarantee agencies must take to attempt to collect defaulted loans on which they have paid default claims. Both regulations require holders of GSL obligations to complete a particular sequence of written and oral contacts with the borrower to demand repayment of delinquent or defaulted loan obligations, and to use skip-tracing if needed to locate debtors; guarantee agencies are also required, under certain circumstances, to sue borrowers, and to enforce judgments taken against the borrowers.

The Secretary expressly promulgated these rules in order to establish the "minimal level of effort necessary to protect the Federal fiscal interest in diligent loan collection," both by guarantee agencies and by lenders. 51 FR 40943. As reflected in the summary of comments and responses on the proposed rule, 51 FR 40943-40944, none of the parties that commented on these regulations raised specific questions or comments regarding the existence or effect of State law regulating debt collection activities on the conduct of the required collection actions described here. Moreover, in the preceding seven years during which lenders holding FISLP obligations had already been subject to comparably prescriptive collection rules, no instances had come to the Secretary's attention in which State rules were found to restrict or otherwise affect compliance with those FISLP-specific rules. For these reasons, the Secretary did not believe there was any need to articulate his intention to preempt inconsistent State laws in promulgating the GSL regulations at issue here in 1986. Nevertheless, in promulgating the rules as the "minimum level of [collection] effort necessary" to accomplish the Federal purpose, the Secretary clearly intended these 1986 rules to establish a uniform national minimum level of collection activity, and therefore to preempt any State rule that would hinder or prohibit the collection actions required under the rules.

### Need for Issuance of Interpretation

Specific questions have now arisen about the effect of particular State laws that may restrict or prohibit holders of GSLP obligations from taking some of the actions required under these regulations. For example, in a number of instances borrowers who were contacted by a loan servicer acting on behalf of a lender after the servicer had been notified that the borrowers were represented by counsel asserted that the servicer had violated State law prohibiting those direct contacts. Similar charges were asserted by borrowers who were contacted directly by a guarantee agency after the agency had been notified that the borrowers were represented by counsel. Still other borrowers asserted that holders of GSL obligations violated State law by continuing to demand repayment of loans on which the borrowers had raised objections to repayment of their loans. In each of these instances, the borrowers invoked State law to attempt to prevent the holder of the loan from commencing or completing the sequence of collection actions prescribed in these regulations; the borrowers have also sought damages from the holders of these loans for the alleged violations of State law. Other State statutes have recently come to light that would prohibit lenders and guarantee agencies from taking any collection action to collect a loan if the school at which the borrower enrolled closed during the

Federal Register / Vol. 55, No. 190 / Monday, October 1, 1990 / Rules and Regulations        40121

academic period for which the loan was made.

These recent developments demonstrate the need to immediately clarify the Secretary's intention to preempt inconsistent State law that underlay the promulgation of these GSL collection regulations in 1986. The Secretary recognized in November 1986 that if there were State laws inconsistent with these GSL regulations, those laws could pose a substantial obstacle to lender and agency efforts to comply with the GSL regulations. Since it is clear that those State laws in fact now exist, the threat of substantial financial penalties for potential violations of those State laws could force holders of GSL Program loans to choose between incurring those penalties by complying with the GSL regulations, or refraining from federally-required collection efforts and losing the Federal guarantee. The possibility of those penalties, moreover, would not only tend to make holders of loans reluctant to complete the required collection actions, but reluctant to undertake those actions at all, and in fact, reluctant to make new loans. If those State laws were to apply to collection activity of the kind required in the regulations, they would thwart the congressional intention implemented in these regulations that holders exercise due diligence in attempting to recover on these loans, to the serious detriment of the GSL Programs.

In issuing the following interpretation explaining the Secretary's intention to preempt State law in promulgating the 1986 regulations, the Secretary stresses the limited nature of this action in displacing State rules and authority. This preemption applies only to actions to collect loans that are federally guaranteed through the vehicle of Federal reinsurance agreements with the guarantee agencies and, in most cases, directly federally subsidized as well. These regulations are designed to prevent defaults and the loss to the Federal Treasury, through claims under the Department's reinsurance commitments, caused by these defaults; and, where these losses have already occurred, to recover from defaulting borrowers the amounts paid from the Treasury. Therefore, rather than intruding into transactions in which the Federal Government has no direct involvement, this preemption is narrowly tailored to apply to situations in which the Federal Government has already given borrowers financial benefits, and has incurred, or will in all likelihood incur in the near future, even greater costs because of default on loans.

Thus, while this preemption imposed no added costs on States, the preemptive effect of these regulations extended no farther than is reasonably necessary to achieve an effective minimum standard of collection action. Given the strength of the public interest in preventing the need for Federal payments on defaulted loans, and in recovering those amounts after payment has been made, the Secretary believed at the time these regulations were promulgated, and continues to believe, that any balancing of interests between appropriate State regulation of collection actions on private debts and the need for a uniform minimum national standard of collection action on publicly-financed student loan debts tips decidedly in favor of diligent student loan collection.

A great deal of the collection action on GSL Program loans is performed for guarantee agencies by third party collection contractors. In balancing the need for local regulation of collection activity on GSL obligations against the public need for efficient and effective collection activity, the Secretary took particular note of the existence of Federal law that regulated the conduct of these third party collectors of defaulted student loans. These debt collectors were subject to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692–1692o, prior to the promulgation of these GSL regulations, and even under these preempting regulations, they remain subject to the FDCPA.[1] Thus, while the GSL regulations preempt inconsistent State laws regarding pre-litigation collection activity, significant Federal protection for GSL debtors remains under the FDCPA. On the other hand, Federal law does not typically regulate the conduct of litigation in State courts or the enforcement of judgments, two areas traditionally regarded as within the sovereignty of State governments, and this GSL regulatory preemption has little or no impact on the exercise of that State power.

Not only did the Secretary regard the issuance of regulations preempting State law affecting student loan collections as well within the general authority and responsibility given under 20 U.S.C.

---

[1] The Secretary has been advised by Federal Trade Commission representatives that no State has yet applied for exemption from coverage under the FDCPA under 15 U.S.C. 1692o, and therefore there is no need at this time to address the effect of this preemption under GSL regulations on State law as it might affect third-party collectors in a State for which the FTC has granted an exemption from compliance with the FDCPA.

---

1082(a)(1), but the Secretary notes that he has long been authorized under 20 U.S.C. 1080(b) to contract with guarantee agencies and other parties to collect defaulted FISLP obligations, and to set the terms of those contracts so as to avoid unfair or oppressive collection practices by those parties in their collection efforts. In promulgating these regulations to set detailed minimum levels of collection activity, the Secretary was exercising this same kind of authority, over the activities of some of the very same GSL participants, in collecting loans in which the Federal government has almost the same financial interest as those to which 20 U.S.C. 1080(a) expressly applies.

Interpretation

The Secretary promulgated §§ 682.410(b)(4) and 682.411 to establish minimum required collection actions on GSL obligations, and intended these provisions of the GSL regulations to preempt contrary or inconsistent State law to the extent necessary to permit compliance with the Federal regulations. The Secretary issues this interpretation to clarify that intention and to explain the scope of that preemptive effect.

*1. Contacts With Borrowers by Demand Letters and Telephone Calls*

First, the Department's regulations require lenders and agencies to make a number of contacts with the borrower directly, at specified intervals, using particular warnings to attempt to persuade the borrower to repay the loan. §§ 682.410(b)(4) (i)–(vi), 682.411 (c)–(f). The regulations require both lenders and guarantors to use skip-tracing if necessary, §§ 682.410(b)(4)(xii), 682.411(g), and direct lenders to seek timely preclaims assistance from their respective guarantors. § 682.411(h). These provisions comprehensively regulate the pre-litigation informal collection activity on GSL obligations, by specifically requiring holders to complete a sequence of collection contacts with debtors. These provisions therefore preempt State law that would prohibit, restrict, or impose burdens on the completion of that sequence of contacts either on GSLP loans in general, or on any category of GSLP loans. §§ 682.410(b)(4) (i)–(vi), (xii); 682.411 (c)–(h). Moreover, because holders of GSLP loans commonly engage servicers and collection agencies to perform these dunning activities, this preemption includes any State law that would hinder or prohibit any activity taken by these third parties to complete these required steps.

## 2. Litigation and Judgment Enforcement

The regulations in § 682.410(b)(4)(vii)–(xi) generally require guarantee agencies to sue defaulters and to attempt to enforce judgments entered against defaulters, but do not otherwise dictate the manner in which the agency must conduct the litigation or enforce the judgment. Therefore, the regulations do not preempt State law that would affect the conduct of litigation or the enforcement of judgments, but would only preempt those State laws, if any, that would conflict with the regulatory requirement that a guarantee agency initiate suit and attempt to enforce a judgment.[3]

---

[3] The HEA itself preempts State law in two areas directly affecting the litigation of GSL obligations: The calculation of the statute of limitations on lawsuits to collect these loans, and the recovery of collection costs from the borrower. 20 U.S.C. 1091a(a)(2), (b)(1).

## 3. Other Collection Activities

This interpretation applies only to preemption by §§ 682.410(b)(4) and 682.411. The Secretary does not attempt here to describe which other provisions of the GSL regulations, or the HEA itself, preempt State law. The Secretary does note, with regard to other collection actions, that the HEA itself expressly requires holders of GSL obligations to report the status of those loans to credit reporting agencies, 20 U.S.C. 1080a, makes GSL borrowers liable for reasonable collection costs, 20 U.S.C. 1091a(b)(1), and abrogates the defense of infancy on GSL obligations. 20 U.S.C. 1091a(b)(2). Each of these three provisions also relates to loan collection and preempts any conflicting or inconsistent State law.

In addressing the preemptive effect of these collection regulations, the Secretary likewise does not suggest that other provisions of GSL regulations do not suggest that other provisions of GSL regulations do not also preempt State law if a direct conflict exists between the requirements of the regulations and State law, or if compliance with State law would frustrate achievement of the purposes of the regulations.

Authority: 20 U.S.C. 1082.

Dated: August 28, 1990.

Lauro F. Cavazos,
*Secretary of Education.*
[FR Doc. 90-23063 Filed 9-28-90; 8:45 am]
**BILLING CODE 4000-01-M**